**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD W. LAYTON,            )
                              )
        Plaintiff,           )
                              )
             v.                )   Civil Action No. 09-54 Erie
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
        Defendant.           )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      Plaintiff, Richard W. Layton (hereinafter "Plaintiff"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.*  Plaintiff filed applications for DIB and SSI on February 14, 2007, alleging that he was disabled since January 30, 2007, due to neck problems and addiction to medication (Administrative Record, hereinafter "AR", 80-82; 85-87; 99).  His applications were denied and he requested a hearing before an administrative law judge ("ALJ") (AR 62-71).  Following a hearing held August 25, 2008, the ALJ found that the Plaintiff was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 17-24; 37-58).  Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, I will deny both motions and the matter will be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**

      Plaintiff was 45 years old on the alleged disability onset date and 47 years old on the date of the ALJ's decision (AR 23).  He is a high school graduate with vocational training in building maintenance (AR 104).  His past work experience was as a maintenance repairman at a school

for approximately 19 years (AR 100).

Historically, Plaintiff has been treated by William Getson, M.D., since May 8, 2002 (AR 243). Plaintiff fell at work on March 5, 2002 and again in July 2002, and subsequently had surgery on March 11, 2003 for a ruptured cervical disk (AR 140). An EMG conducted after surgery was normal and did not show the radiculopathy that had been present on a previous EMG (AR 186). An MRI and an x-ray taken in July 2004 showed post-surgical changes in the cervical spine (AR 186). On August 9, 2004, the Plaintiff complained that his pain medication (Duragesic patches) were making him sick, and also complained of fatigue and dizziness (AR 155). He was assessed with cervical disc disease and was prescribed methadone for his pain (AR 155). On December 10, 2004, Plaintiff reported numbness, weakness, dizziness, depression and anxiety (AR 153). Dr. Getson assessed him with cervical neck pain, discontinued his Duragesic patch and restarted him on Suboxone (AR 154).

On October 6, 2005, Dr. Getson reported that the Plaintiff's neck had minimal tenderness on palpation and a good range of motion, but he was slightly limited to right rotation and on flexion and extension (AR 152). He was assessed with cervical disk disease and his Suboxone dosage amount was decreased (AR 152).

Throughout 2006, Plaintiff continued treating with Dr. Getson. In January 2006, Dr. Getson reported that his range of motion was limited in all directions, and the Plaintiff stated that he was attempting to "wean" off his medications but was unable to do so secondary to pain (AR 151). Dr. Getson found "no drug seeking habits" but recommended that he consider decreasing his pain medication within the next month (AR 151). In February 2006, Plaintiff complained of neck and shoulder pain, but he was no longer nauseated after decreasing his pain medication (AR 148). In May 2006, Plaintiff claimed that he "[hurt] all over", especially in his neck and hands, and was taking more than the prescribed dosage of his pain medication (AR 147). He reported that he had quit his part-time job, but still worked full-time and engaged in yard work (AR 147). He was diagnosed with cervical disc disease and Dr. Getson increased his Suboxone dosage, with instructions to take smaller doses during the day and higher doses in the evening (AR 147). In August 2006, Plaintiff continued to complain of neck pain radiating down his right arm, with occasional numbness and dizziness at times (AR 144). He reported that he was "missing too

much work" (AR 144).  He was prescribed Suboxone and Skelaxin (AR 144).

In September 2006, Plaintiff reported increased pain while performing the requirements of his job, including lifting, crawling and repetitive arm motions (AR 140).  On physical examination, Dr. Getson found he had decreased range of motion, especially towards right rotation (AR 140).  Muscle strength testing of the shoulder and upper extremities was 5+/5, including impingement tests, sensation and circulation were intact, grip strength was 5+/5 and deep tendon reflexes were equal at 2+/4 in the bicep tendons (AR 140).  He was diagnosed with chronic cervical disc disease and was continued on Suboxone (AR 140).  He was referred to physical therapy for evaluation and possible traction, and Dr. Getson completed his FMLA and disability forms (AR 140).

In October 2006, Plaintiff presented with forms for disability stating that he was unable to perform his job due to pain in his neck and right shoulder (AR 140).  He also reported occasional numbness in his right hand (AR 140).  On physical examination, Dr. Getson reported a decreased range of motion of his neck, especially on right rotation and extension (AR 140).  There were no palpable points of tenderness or masses, but he had some mild tenderness over the lower cervical spine (AR 140).  Plaintiff exhibited good range of motion of his right shoulder without pinpoint tenderness, distal sensation and circulation of the right arm was within normal limits and grip strength in his right hand was slightly less than the grip in his left hand (AR 140).  Dr. Getson continued him on the Suboxone (AR 140).

On October 30, 2006, Dr. Getson completed a Medical Report form for the State Employees' Retirement System (AR 183-184).  He reported that the Plaintiff continued to complain of severe neck and right arm pain stemming from a fall at work in 2002, for which he had surgery in 2003 for a ruptured cervical disc (AR 183).  Dr. Getson stated that he saw the Plaintiff on a monthly to bi-monthly basis, and that he exhibited a decreased range of motion of his neck, as well as tenderness, on May 8, 2002, November 2004, August 2006 and on October 30, 2006 (AR 183).  An EMG study dated June 26, 2002 revealed findings consistent with right C6 radiculopathy and an MRI showed findings consistent with a herinated disc (AR 183).  A cervical spine x-ray on July 11, 2004 showed post surgical changes (AR 183).  Dr. Getson listed his diagnosis as cervical disc disease and radicular right shoulder/arm pain (AR 184).  He

3

indicated that surgery had helped for a short period of time and that his pain medication (Suboxone) helped "take [the] edge off" his pain (AR 184). He concluded that the Plaintiff was no longer able to perform the duties of his job, which required lifting and repetitive use of his arms and shoulders (AR 184).

Plaintiff returned to Dr. Getson on January 15, 2007 and complained of neck pain and insomnia (AR 201). Physical examination revealed tenderness of the posterior neck at C5-6, stiffness with dorsiflexion, limited range of motion towards the left and pain was elicited on motion (AR 202). On the treatment note form, Dr. Getson opined that, in his opinion, the Plaintiff's pain was "due to increased scar tissue and failed neck surgery" (AR 203).

Plaintiff reported on March 12, 2007 that he lived with his wife, walked his dogs, performed yard work, took out the trash, shopped for necessities and was able to handle his finances (AR 106-109). He also reported that he attended family gatherings and picnics, could drive, clean, wash dishes, prepare simple meals and care for his personal needs (AR 107-110). Engaging in postural activities was "very painful", but he had no problem completing tasks, following instructions, or getting along with authority figures (AR 111-112).

On April 2, 2007, a state agency adjudicator reviewed the medical evidence of record, as well as the Plaintiff's reported daily activities, and concluded that the Plaintiff could perform light work (AR 161-166). On April 16, 2007, Arlene Rattan, Ph.D., a state agency reviewing psychologist, completed a Psychiatric Review Technique Form ("PRTF"), and concluded that the Plaintiff had no medically determinable mental impairment (AR 167-169).

Plaintiff returned to Dr. Getson on May 11, 2007 for complaints of acute abdominal pain (AR 198-200). Physical examination of his cervical spine elicited pain on rotation and at extreme limits on the range of motion (AR 199). No tenderness was noted on palpation and there was no instability or weakness found (AR 199). No psychological symptoms were found (AR 199). He was assessed with abdominal pain, cervical disc degeneration and nicotine dependence (AR 200).

On May 15, 2007, Dr. Getson completed a second State Employees' Retirement System Medical Report form (AR 185-186). In that form he reported:

> He continued to work which included lifting, crawling and
> repetitive arm motions. Above pain progressively worse until ~ 6

> [months] ago no longer able to work.  Has been to [a]
> [n]eurosurgeon and pain management specialist.  Remains
> incapacitated.  On pain meds and prognosis [is] poor for any future
> employability.  Last seen 5/11/07 and averages frequency of every
> 3 months.

(AR 185).  Although he found no evidence of muscle atrophy, he noted that the Plaintiff had weakness in his right arm and exhibited tenderness of his cervical spine (AR 185).  Dr. Getson's diagnosis at that time was C6 cervical disc disease, radiating pain to the right arm and failed cervical disc surgery (AR 186).  He further concluded that the Plaintiff's condition had progressively worsened and that he was "no longer able to work in the capacity that his duties require" (AR 186).

When seen by Dr. Getson on June 21, 2007, Plaintiff reported neck pain radiating down his right shoulder, as well as back pain, insomnia and depression (AR 195).  He claimed that "Oozes" helped with his pain but he was unable to afford the co-pay and did not want to increase his Suboxone dosage (AR 195).  On physical examination, Dr. Getson reported that Plaintiff had tenderness of the posterior neck at C5-6, he was stiff with dorsiflexion and pain was elicited on motion (AR 196).  Cervical spine rotation was limited towards the left on range of motion testing (AR 196).  Plaintiff's lumbosacral spine exhibited tenderness on palpation of the transverse process, he exhibited muscle spasms over the iliolumbar regions and he had decreased active flexion and extension (AR 196).  His sensation, motor strength, gait, stance and reflexes were normal (AR 196).  He was assessed with lower back pain, cervical disc disease with myelopathy, depression and organic insomnia (AR 196).  Dr. Getson started him on Fluoxetine for pain, insomnia and depression and noted that the Plaintiff's depression was "moderate" based on a questionnaire he completed during the office visit (AR 197; 222-224).

Dr. Getson also gave the Plaintiff a letter dated June 21, 2007 regarding his disability, stating that the Plaintiff had been his patient for several years and that an MRI dated July 13, 2004 showed spinal fusion and myelopathy (AR 182).  He opined that his prognosis was "poor" (AR 182).  Dr. Getson indicated that the Plaintiff had attempted to work two jobs but was unable to perform his duties (AR 182).  He concluded that the Plaintiff "[would] not be able to function in the work force ever again" (AR 182).

On August 16, 2007, the State Employees' Retirement System concluded that the

5

Plaintiff was permanently disabled (AR 181).

On September 28, 2007, Plaintiff reported that he was doing well on his current Suboxone dosage (AR 192). He complained of neck pain, right shoulder joint pain, depression and insomnia (AR 192-193). Dr. Getson reported that he had tenderness of the posterior neck at C5-6, he was stiff with dorsiflexion and pain was elicited by motion (AR 193). Cervical spine rotation was limited towards the left on range of motion testing (AR 193). Plaintiff's lumbosacral spine exhibited tenderness on palpation of the transverse process and he had decreased active flexion and extension (AR 193). His sensation, motor strength, gait, stance and reflexes were normal (AR 193). He was continued on his Suboxone dosage (AR 194).

On November 7, 2007, Dr. Getson noted that the Plaintiff continued to have pain but it was controlled with medication (AR 230). Dr. Getson reported he had no depression and no insomnia (AR 231).

Plaintiff returned to Dr. Getson for follow-up on December 18, 2007 (AR 188-191). He complained of continuing neck pain radiating down his right arm and generalized weakness of his right arm, as well as occasional sharp, shooting pains that caused him to drop things (AR 188). He also complained of depression and trouble sleeping (AR 188). Physical examination was essentially unchanged from his September 2007 visit. His Prozac dosage was increased and he was continued on Suboxone (AR 190-191).

Plaintiff was seen by Dr. Getson on January 4, 2008 for suture removal following the removal of a lesion from his scalp (AR 225; 228). His "active problems" included cervical disc degeneration and depression (AR 225). His pain medications were continued (AR 226).

Plaintiff returned to Dr. Getson on July 7, 2008, who subsequently completed a "Spinal Impairment Questionnaire" form on July 9, 2008 (AR 243-249). On this form, Dr. Getson reported that he saw the Plaintiff quarterly, he suffered from cervical disc disease and depression and his prognosis was "poor" (AR 243). His clinical findings showed that the Plaintiff had a decreased cervical range of motion on flexion/extension, a minimal decreased range of motion of the lumbar spine, mild muscle spasm and mild weakness of the cervical and lumbar spines, but no tenderness, sensory loss, reflex changes or muscle atrophy (AR 243-244). There was no swelling, only mild cervical crepitus, minimal trigger points, his gait was normal and his straight

6

leg raise testing was negative (AR 244).  Dr. Getson concluded that the Plaintiff's neck pain was exacerbated by increased activity and he had been unable to relieve his pain through medication (AR 246).

Dr. Getson completed a residual functional capacity assessment form included within the "Spinal Impairment Questionnaire" form, where he found that the Plaintiff was capable of sitting for two hours but needed to stand and move around every 15 minutes; was capable of standing and/or walking for less than one hour in an eight hour work day; was capable of lifting up to five pounds and carrying up to ten pounds occasionally; and was precluded from pushing, pulling, kneeling, bending or stooping  (AR 246-247; 249).  Dr. Getson further found that the Plaintiff needed to take unscheduled breaks, was unable to keep his neck in a constant position, could not tolerate "low stress" work and would likely be absent from work more than three times per month due to his impairments (AR 248).  Finally, Dr. Getson noted that the Plaintiff was not a malingerer (AR 248).

Plaintiff testified at the administrative hearing held by the ALJ that he was able to drive but had not done so in the past year due to medication side effects (AR 42-43).  He wore a brace on his right wrist prescribed by Dr. Getson on a daily basis (AR 43).  He testified that he suffered from neck pain radiating down his right arm, as well as lower back pain (AR 44).  His right arm was numb most of the day (AR 48).  He previously tried physical therapy without success and had not undergone injection therapy or further surgery (AR 45).  He acknowledged that pain medications were effective in relieving his pain on "some days" but they caused dizziness, drowsiness and nausea (AR 45; 54).  He claimed that his pain was "getting worse" and that he spent most of his time on the couch watching television (AR 50).  Plaintiff testified that on an average day, he rated his pain as a seven or eight on a ten point scale (AR 52).  He took medication for depression but Dr. Getson had not referred him to a psychiatrist or psychologist for mental health treatment (AR 49).

Plaintiff testified that he was able to walk for one-half hour and stand for one-half hour before he needed to sit (AR 46).  He was able to sit for 15 minutes to one-half hour before needing to stand up and move around (AR 46).  He could lift approximately 10 pounds off of a table but would become light-headed bending over and picking something up off the floor (AR

46-47). He was able to care for his personal needs without assistance and perform routine household chores, although his wife performed the chores and his brother and son mowed the lawn (AR 50; 52).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform sedentary work that did not require repeated overhead reaching or lifting with the dominant right arm, no repeated pushing or pulling against resistance with the dominant right arm, no frequent or rapid head turning to extremes of range of motion, no climbing or balancing as an integral part of the job and no bending at the waist to extremes of range of motion (AR 55-56). The vocational expert testified that such an individual could perform the sedentary jobs of a surveillance system monitor, order clerk in the food and beverage industry and ticket clerk (AR 56). The vocational expert further testified that all of the cited positions could be performed with a sit/stand option (AR 56). Finally, the vocational expert testified that there would be no jobs for an individual who was unable to report to work three or more times per month or was off-task 10 to 15 percent of the workday excluding the usual work breaks (AR 56).

Following the hearing, the ALJ issued a written decision finding the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 17-24). His request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through September 30, 2011 (AR 17). SSI does not have an insured status requirement.

To be eligible for DIB or SSI, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or a combination of such impairments) which is so severe that he is unable to pursue substantial gainful employment currently existing in the national economy. 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The process proceeds as follows:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Plaintiff's case at the fifth step. At step two, the ALJ found that the Plaintiff's cervical disc disease status post cervical surgery in 2003, and his complaints of right shoulder pain and lumbar pain were severe impairments, but determined at

step three that he did not meet a listing (AR 19-21). At step four, the ALJ concluded that he retained the residual functional capacity to perform sedentary work that did not require repeated overhead reaching or lifting with the dominant right arm, no repeated pushing or pulling against resistance with the dominant right arm, no frequent or rapid head turning to extremes of range of motion, no climbing or balancing as an integral part of the job and no bending at the waist to extremes of range of motion (AR 21). At the final step, the ALJ found that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 24). The ALJ additionally determined that his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with his residual functional capacity assessment (AR 22). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff claims that the ALJ erred with respect to his evaluation of the opinion of Dr. Getson, his treating physician, because he failed to accord Dr. Getson's opinion controlling weight and/or rejected it on inadequate grounds. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a long period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999) (citations omitted); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3rd Cir. 1994). In choosing to reject a treating physician's opinion, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988) (holding that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence" not "simply by having the administrative law judge make a different judgment"). In addition, a treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§

404.1527(d)(2); 416.927(d)(2).  Finally, where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reason for doing so.  *See Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faces with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

      Dr. Getson rendered several opinions with respect to the Plaintiff's ability to work.  He opined that the Plaintiff was unable to perform the functions of his job (AR 184-186).  He also found that the Plaintiff would not be able to "function in the work force ever again" (AR 182), and rendered a residual functional capacity assessment that essentially precluded the Plaintiff from working, even at a sedentary level (AR 243-249).  The ALJ accepted Dr. Getson's opinion that the Plaintiff was no longer able to perform his past job, which required lifting and repetitive use of his right arm and shoulder, concluding that it was "consistent with the medical evidence of record" (AR 22).  He rejected, however, his opinion that the Plaintiff was "permanently disabled" and unable to work on a "sustained basis":

> Dr. Getson however has gone on to say that the claimant is permanently disabled, and not able to work on a sustained basis (Exhibits 6F and 7F).  Treatment notes do not support this conclusion.  On physical examination, he has found reduced flexion/extension of the neck, a minimal decrease in the range of motion of the lumbar spine, no tenderness, only mild muscle spasm and weakness in the cervical and lumbar spines, mild cervical crepitus and minimal trigger points.  Dr. Getson does not find any sensory loss, any reflex change and no muscle atrophy.  He [has] not referred the claimant for any further treatment, alternative modalities or pain management.  His conclusion as to the claimant's disability is not supported by the evidence, and as such is not entitled to any significant weight.

(AR 22).

      I find that the ALJ's rejection of Dr. Getson's opinion is based, in part, on assumptions that are not substantially supported by the record.  The ALJ discounted Dr. Getson's opinion on the grounds that it was inconsistent with his own findings on physical examination and the Plaintiff's course of treatment.  An ALJ is permitted to review the treating physician's notes to determine if the opinion is supported and thus entitled to deference.  *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3rd Cir. 2009).  Here, the ALJ states that Dr. Getson's treatment notes consistently revealed "no tenderness" of the Plaintiff's cervical spine on physical

11

examination. The record is replete however, with such findings from May 2002 through December 2007 (AR 140; 152; 183; 185; 188; 193; 196; 202). The ALJ further states that Dr. Getson had not referred the Plaintiff for "any further treatment, alternative modalities or pain management" (AR 22). The record reflects, however, that Dr. Getson referred the Plaintiff to physical therapy for evaluation and possible traction, and had referred him to a neurosurgeon and pain management specialist (AR 140; 185). An ALJ's rejection of a treating physician's opinion is not supported by substantial evidence where it is based upon factual inaccuracies or mischaracterizations of the evidence. *See Brownawell,* 554 F.3d at 357; *see also Wilson v. Astrue*, 2009 WL 793039 at *16 (W.D.Pa. 2009) ("If the disability determination of an administrative law judge is based on erroneous facts, it is not supported by substantial evidence.").

The ALJ also rejected Dr. Getson's opinion on the basis that Dr. Getson failed to find the Plaintiff suffered from any sensory loss, reflex changes or muscle atrophy (AR 22). As the Plaintiff points out, this is the type of "lay opinion" that this Court held was impermissible in *Krizon v. Barnhart*, 197 F. Supp. 2d 279 (W.D.Pa. 2002):

> We have little difficulty concluding that the ALJ's decision to discount or reject Dr. Brocker's opinion is not supported by substantial evidence. The ALJ's only explanation for criticizing it, that it is inconsistent with the doctor's conclusion that Plaintiff's major systems are stable, appears to be based solely on the ALJ's own conclusion that someone suffering from musculoskeletal pain would necessarily also have abnormal hearing, vision, cardiovascular and/or other systems. This is impermissible lay opinion that does not adequately address the pertinent issues of whether Dr. Brocker's opinion is well-supported and whether it is consistent with the other substantial record evidence. ...

*Krizon*, 197 F. Supp. 2d at 288; *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998) (holding that the ALJ improperly made a medical determination by concluding that an absence of muscle atrophy was inconsistent with a finding of disability). By focusing on the lack of sensory loss, reflex changes and/or muscle atrophy, the ALJ improperly "set his own expertise against that of" the treating physician. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir. 1985). An ALJ "cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3ed 630, 634 (7th Cir. 2007).

Given these errors in the evaluation of Dr. Getson's opinions, the case shall be remanded

to the Commissioner for further consideration consistent with this Memorandum Opinion. Since we have determined that a remand is appropriate for the reasons discussed above, this Court need not address the Plaintiff's challenge to the ALJ's credibility determination inasmuch as the ALJ will necessarily re-evaluate the Plaintiff's credibility in the course of reconsidering the medical evidence.

## IV. Conclusion

Based upon the foregoing reasons, the Plaintiff's motion for summary judgment shall be denied and the Commissioner's motion for summary judgment shall be denied. The matter shall be remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion. An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD W. LAYTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-54 Erie |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 8th day of February, 2010, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 9] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is hereby directed to mark the case closed.

                                                                  s/ Sean J. McLaughlin
                                                                  United States District Judge

cm: All parties of record.